# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARLES SMITH, HECTOR CASAS, and BARRY NEWMANN, individually and on behalf of all other similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>CRST VAN EXPEDITED, INC., et al.,<br><br>Defendants. | CASE NO. 10-CV-1116- IEG (WMC)<br><br>**ORDER OVERRULING CLASS MEMBER JAMES COLE'S OBJECTIONS AND DENYING INTERVENTION AND CONSOLIDATION**<br><br>[Doc. No. 86] |

This is a class action by truck drivers against their employer, trucking company CRST Van Expedited, Inc. ("CRST"), for failure to pay minimum wages during certain stages of the company's driver training program and related violations of California Business and Professions Code Section 17200. After nearly three years litigating these claims, the parties agreed to a proposed settlement, which the Court preliminarily approved on April 23, 2012. [Doc. No. 78.] Before the Court are class member James Cole's objections to final settlement approval and requests to intervene or consolidate. [Doc. No. 86.] For the reasons stated below, the Court **OVERRULES** Cole's objections and **DENIES** his requests.

## BACKGROUND

The class is represented by three individuals, Charles Smith, Hector Casas, and Barry Newmann (collectively, the "Class Representatives").

Three portions of CRST's training program, (1) truck driver training school; (2) orientation;

and (3) over-the-road training, pertain to the claims alleged as follows:

1. <u>Truck driver training school</u>: Certain drivers, referred to as Contract Student Drivers, were required to attend an 8 month truck driving school with the option of doing so at CRST's expense if they signed Driver Employment Contracts.  Under the Driver Employment Contracts, if those drivers did not remain employed with CRST for a full 8 months, they would be obligated to pay CRST $3,950.  This amount was ostensibly to repay the cost of the program, but was in fact $2,450 more than the cost of the program, and thus Plaintiffs allege the obligation to pay constituted an unenforceable penalty.

2. <u>Orientation</u>: All drivers were required to attend orientation, for which no compensation was paid.  Plaintiffs allege they were entitled to California and federal minimum wage for the roughly 29 hours spent in this orientation.

3. <u>Over-the-road training</u>: Certain drivers were required to participate in over-the-road training, for which they received a flat $50 per day rate for 28 days.  Plaintiffs allege this rate failed to meet the California and federal minimum wage.

 For settlement purposes, the Court certified the following class divided into subclasses:

Persons who resided in the State of California at the time of their date of hire and who worked as truck drivers for CRST Van Expedited, Inc. between November 5, 2005 and April 23, 2012. These persons are divided into the following subclasses:

**Subclass 1** – Contract Student Drivers [Drivers who attended truck driver training school at CRST's expense] who worked for CRST for more than 8 months, or who have a current balance that CRST contends is still owed for training expenses which is less than $500;

**Subclass 2** – Contract Student Drivers who have a current balance of $500 or more, which CRST contends is still owed for their training expenses, or who are employed by CRST as of the date of Preliminary Approval Date, but have not completed the 8 months required by their Driver Employment Contacts; and

**Subclass 3** – Drivers who were not Contract Student Drivers [Drivers who (a) paid for their own truck driver training school, (b) who pre-paid CRST for the cost of truck driver training school, or (c) who already had their Commercial Driver's License when they started work for CRST and did not attend truck driver training school].

As consideration for the release of all claims expressly and derivatively asserted in this action, the settlement provides the class with a total financial benefit in excess of $11,600,000. This includes a non-reversionary $2,625,000 cash payout and over $9,000,00 in outstanding debt under the Driver Employment Contracts that CRST agrees to relieve.  In addition to the financial benefits of the settlement, CRST has agreed to significant changes to its policies and training program that will benefit its employees going forward, including a full disclosure form provided to employees prior to enrollment in the training program, temporary employee status for drivers when tested by the Department of Motor Vehicles, payment for driver during orientation going

forward, payment by a split mile basis rather than $50 per day for over-the-road training going forward, and a $250 bonus going forward for all drivers who remain employed eight months after completion of the training program. [*See* Doc. No. 88-5.]

## DISCUSSION

As well as being an objecting class member, Cole is lead plaintiff in another class action against CRST proceeding in the Central District of California, which was recently decertified and of which the majority of claims have already been dismissed. [*See Cole v. CRST, Inc.*, 08-cv-1570-VAP (C.D. Cal. Sept. 27, 2012), Doc. No. 125 (Order Granting in Part Defense Motions for Judgment on the Pleading and to Decertify the Class).]

Cole makes two arguments against approval of the proposed settlement here: (1) that the award to subclass 1, of which he is a member, is too small; and (2) that the proposed settlement risks impinging the claims asserted in his action. [*See* Doc. 86 at 4-7.]  Alternatively, in the event the settlement is approved, Cole argues for either his intervention and appointment as co-counsel or consolidation with his action. [*Id*. at 8-9.]

### I.     Objections to the Settlement

#### A.     Size of Award

Cole's challenge to the size of the award miscalculates its value, and, in any event, fails to explain why such an amount would be unreasonable.  Cole asserts that the $2,625,000 cash portion of the settlement provides an average recovery of $509 per class member, which he characterizes as inadequate. [*See* Doc. No. 86 at 4.]  But this calculation fails to account for CRST's agreement to forego recovering over $9,000,000 in truck driver training school fees from class members.  The total value of the settlement including this benefit is at least $11,625,000, representing an average value of $1,592.47 per class member, more than three times the amount Cole characterizes as inadequate. *See Officers For Justice*, 688 F.2d at 628 ("A cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair. … It is the complete package taken as a whole, rather than the individual component parts, that must be examined for overall fairness.").  Moreover, because the cash payout is non-reversionary and only approximately half of the noticed class filed claims, the actual cash payout to Cole and other

1  member of subclass 1 will be $877.21, or 180% of estimated damages. [*See* Doc. 88-5 at 4-5

2  (Decl. of A Mark Pope).]  Whatever the amount, Cole makes no showing of what would be

3  sufficient or why.  Such unsupported objection cannot justify denial of approval.  *See, e.g., Ellis v.*

4  *Naval Air Rework Facility*, 87 F.R.D. 15, 20 (N.D. Cal. 1980) ("He does not specify what amount

5  would fairly, adequately, and reasonably settle his monetary claims. Nor does he state on what

6  grounds he deserves a larger share of the settlement funds. This Court thus finds it impossible to

7  respond to his objection in any way other than dismissing it for lack of support.").  Accordingly,

8  Cole's objection on the basis of the award to subclass 1 is **OVERRULED**.

### B. Scope of Release

Cole also objects that the settlement release is too broad, notwithstanding the express carve-out with respect to Cole's action, because it might release claims that he wishes to assert in his separate class action.  [*See* Doc. No. 86 at 4-8.]

In this case, the proposed settlement releases two categories of claims: (1) the "claims asserted in the complaint;" and (2) "Derivative Claims," *i.e*., claims "arising out of, derived from, or related to the [c]laims and allegations in the [c]omplaint." [*See* Doc. No. ]   Cole argues that there is a chance that the "Derivative Claims" release could cover certain claims in his case. [Doc. No. 86 at 5-6.]  For the reasons below, Cole's purported concerns appear overwrought, if not entirely meritless.

First, notwithstanding Cole's objection, it is well within this Court's authority to release derivative claims, even if they are not expressly asserted in the complaint.  *See Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1287 (9th Cir. 1992) ("[A] federal court may release not only those claims alleged in the complaint, but also a claim based on the identical factual predicate as that underlying the claims in the settled class action even though the claim was not presented and might not have been presentable in the class action.").

Second, the only claim in Cole's action that is certainly released by this settlement, is the claim for failure to pay minimum wages during orientation.  But that claim was decertified, and thus only remains as an individual claim for Cole himself.  Any other claims in Cole's action ostensibly similar to the minimum wage related claims central to this action have already been

dismissed, except Business and Professions Code 17200 claims which are dependant on the dismissed or decertified minimum wage claims, and thus appear likely to be dismissed. [*See* Doc. No. 92 at 3-4 (CRST Response to Objection).] Thus, to the extent any claims remain viable in Cole's action, they appear limited to Cole's individual claims. As such, even if these remaining claims do overlap with the release in the proposed settlement, Cole was free to preserve them by individually opting out, which he has not done.

Third, any other class members that believed Cole's case presented a better means for recovery had notice and opportunity to opt out of the proposed settlement in this case. But Cole, even as class representative in his separate action, cannot opt out on behalf of anyone other than himself. *See Hanlon*, 150 F.3d at 1024 ("The right to participate, or to opt-out, is an individual one and should not be made by the class representative or the class counsel."). Cole and his lawyer may be disappointed that this action settled first and that so few class members opted out thereby diminishing Cole's potential class, but their disappointment is beside the point. *Id*. ("to allow representatives in variously asserted class actions to opt a class out without the permission of individual class members would lead to chaos in the management of class actions."); *see also Blair v. Equifax Check Services, Inc.*, 181 F.3d 832, 838 (7th Cir. 1999) ("When the cases proceed in parallel, the first to reach judgment controls the other, through claim preclusion (res judicata).").

Fourth, in the same vein, Cole's objection is solely his own and should not be considered as on behalf of some unsubstantiated class he purports to represent. *Hanlon*, 150 F.3d at 1024 ("There is no class action rule, statute, or case that allows a putative class plaintiff or counsel to exercise class rights en masse, either by making a class-wide objection or by attempting to effect a group-wide exclusion from an existing class."). "Indeed, to do so would infringe on the due process rights of the individual class members, who have the right to intelligently and individually choose whether to continue in a suit as class members." *Id.*

Fifth, the settlement release is expressly limited to the claims asserted in this action and "Derivative" claims that arise from the same underlying facts and circumstances. Moreover, the settlement includes a carve-out that explicitly disavows the release of claims in Cole's separate action. Thus, on its face, the settlement does not appear to impinge on Cole's claims and any

dispute as to the scope of release is premature. Of course, CRST can be expected to seek to enforce the release as broadly as possible and, if so faced, Cole will argue for a narrow interpretation. But there is no dispute at this time and CRST has not yet sought to enforce this release in Cole's action. If such a dispute ever in fact arises, it will be for the Court hearing the dispute, with full briefing, to decide. Here, the existence of any impingement remains purely speculative and thus cannot prevent approval. [*Cf.* Doc. No. 86 at 8.]

Sixth, though Cole makes passing reference to the possibility of a reverse auction, he makes no showing of anything suggesting impropriety on the part of the settling parties. [*See* Doc. No. 86 at 9-10 (" . . . the ensuing 'race to settlement'. . ."). Rather than concern with or critical of reverse auctions, Cole simply appears unhappy that his was not the class CRST chose to settle with, and thus this insinuation provides no support to his objection. *Negrete v. Allianz Life Ins. Co. of North America* 523 F.3d 1091, 1099-1100 (9th Cir. 2008) ("Counsel floated out the specter of a reverse auction, but brought forth no facts to give that eidolon more substance," if the party's unsupported assertion were accepted, the "'reverse auction argument would lead to the conclusion that no settlement could ever occur in the circumstances of parallel or multiple class actions – none of the competing cases could settle without being accused by another of participating in a collusive reverse auction.'").

Accordingly, Cole's objection on the basis of the scope of release is **OVERRULED**.

**II.     Request to Intervene**

Cole also requests permissive intervention. [*See* Doc. No. 86 at 8.] Under Fed. R. Civ. P. 24, to warrant permissive intervention, a party must establish "an independent ground for jurisdiction, the motion to intervene is timely, and a common question of law or fact exists." *Lane v. Facebook, Inc.,* 2009 WL 3458198, at *2 (N.D. Cal. Oct. 23, 2009) (citing *Southern Calif. Edison Co. v. Lynch*, 307 F.3d 794, 803 (9th Cir. 2002)). "Even if the threshold requirements for permissive intervention are met, a court has discretion to deny permissive intervention." *Id.*

Cole's eleventh hour request fails to make the required showings. A party must seek to intervene "'as soon as he knows or has reason to know that his interests might be adversely affected by the outcome of the litigation.'" *See Cohorst v. BRE Properties, Inc*., 2011 WL

3475274, *4 (S.D. Cal. 2011) (quoting *Yniguez v. Arizona*, 939 F.2d 727, 731 (9th Cir. 1991)). Cole concedes that he has been aware of the present case since its inception (2009), yet made no attempt to intervene before now.  [*See* Doc. No. 89 at 3.]  As such, his request is untimely.  *In re Wachovia Corp. "Pick-A-Payment" Mortg. Marketing and Sales Practices Litigation*, 2011 WL 1877630, *6-7 (N.D. Cal. 2011) (denying a request to intervene as untimely where it was filed shortly before the final approval hearing in a case that had been "litigated vigorously for almost four years" and where the proposed settlement was "the product of months-long, arms-length negotiations"); *Gaskin v. Pennsylvania*, 231 F.R.D. 195, 196 n.1 (E.D. Pa. 2005) (stating that while "[i]ntervention at an earlier point may have been welcomed," but that since the case had been in litigation for years, and with the applicant's knowledge, intervention "[a]t this late hour … would unduly delay resolution of the issues and unfairly prejudice the parties.").

Further, even were his request timely, Cole cites no law, makes only a cursory comparison of the two cases, and gives no even common sense justification for intervention.  [*See* Doc. No. 86 at 8.] Rule 24(c) specifically requires an applicant to "state the grounds for intervention." Fed. R. Civ. P. 24(c).  Cole's failure to explain why he is entitled to intervene under Rule 24 also warrants denial.  *See, e.g., Gentile v. Sun Products, Inc*., 2011 WL 794511, 1 (D. Neb. 2011) (denying request for intervention when the applicant's motion did not identify whether intervention was sought under subsection (a) or (b) of Rule 24 and did not state the grounds for intervention); *Gaskin*, 231 F.R.D. at 196 n.1 (characterizing a request for intervention that failed to "identify the type of intervention" sought and failed to identify grounds for intervention as "utter disregard for Rule 24(c)" that "warrants denial of the motion").

Nor does Cole make any showing that present class counsel are inadequate, standing alone, to represent the class.  Rather, the only apparent reason for this late request for intervention seems to be his own counsel's interest in fees, coupled with a threat to delay finality of the settlement by appealing the result of his objection.  Cole asserts that though "the Court no doubt is concerned with disturbing the finality of a settlement at this juncture . . . objectors may be required to take further action to preserve their rights, and this action could have the unfortunate effect of further delaying and complicating the finality of this settlement."  [Doc. No. 86 at 8.]  This fails to justify

intervention as it appears to reflect a dispute over his lawyers' fees more than any right or interest of the class or even Cole himself.  As such, Cole's request to intervene is **DENIED**.

### III. Request for Consolidation

Similarly, Cole invokes Fed. R. Civ. P. 42 and asserts that the Court has the discretion to consolidate this matter and the Cole case, but fails to explain why or how. [*See* Doc. No. 86 at 10.] This empty assertion does not suffice. *See*, *e.g.*, *Watkinson v. Great Atlantic & Pacific Tea Co., Inc.*, 585 F. Supp. 879, 883 (E.D. Pa. 1984) (noting that the "moving party has the burden of persuading the court that consolidation is proper," and denying consolidation in the absence of an explanation for why the movant "waited one and one-half years" to seek consolidation). Moreover, Cole's action is proceeding in the Central, rather than Southern, District of California and Rule 42 does not provide for the consolidation of cases proceeding in different jurisdictions. *See Italian Colors Restaurant v. American Express Co.*, 2003 WL 22682482, at *7 (N.D. Cal. 2003) ("Consolidation under Federal Rule of Civil Procedure 42(a) is a device constricted in scope to multiple cases pending in the same district. Plaintiffs cite no authority by which this Court could divest other Article III courts of jurisdiction over matters pending before them.").  Accordingly, even were consolidation appealing in the present case (and Cole has failed to show that it is), it would still be unavailable.  Thus, Cole's request for consolidation is **DENIED**.

### CONCLUSION

For the foregoing reasons, the Court hereby **OVERRULES** Cole's objections to the settlement and **DENIES** his requests for intervention and consolidation.

**IT IS SO ORDERED.**

**DATED:**     November 20, 2012

*(signature)*

**IRMA E. GONZALEZ**
**United States District Judge**