1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARLES SMITH, HECTOR CASAS, and BARRY NEWMANN, individually and on behalf of all other similarly situated,<br><br>                                   Plaintiffs,<br><br>vs.<br><br><br>CRST VAN EXPEDITED, INC., et al.,<br><br>                                  Defendants. | CASE NO. 10-CV-1116- IEG (WMC)<br><br>**ORDER:**<br><br>1.    **GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND AWARD OF INCENTIVE PAYMENTS TO CLASS REPRESENTATIVES**<br><br>[Doc. No. 88]<br><br>2.    **GRANTING MOTION FOR ATTORNEYS' FEES AND COSTS.**<br><br>[Doc. No. 81] |

Presently before the Court are Plaintiffs' motion for final settlement approval and incentive payments to class representatives, [Doc. No. 88], and Plaintiffs' motion for attorneys' fees and costs. [Doc. No. 81.] For the reasons stated below, both motions are **GRANTED.**

## BACKGROUND

This is a class action by truck drivers against their employer, CRST Van Expedited, Inc. ("CRST"), for failure to pay minimum wages during certain stages of the company's driver training program and related violations of California Business and Professions Code Section 17200. [*See, e.g.*, Doc. No. 1, Ex. A (original complaint).] The class is represented by Charles Smith, Hector Casas, and Barry Newmann (collectively, the "Class Representatives"). Three portions of CRST's training

program, (1) truck driver training school; (2) orientation; and (3) over-the-road training, pertain to the claims alleged as follows:

1. <u>Truck driver training school</u>: Certain drivers, referred to as Contract Student Drivers, were required to attend an 8 month truck driving school with the option of doing so at CRST's expense if they signed Driver Employment Contracts. Under the Driver Employment Contracts, if those drivers did not remain employed with CRST for a full 8 months, they would be obligated to pay CRST $3,950. This amount was ostensibly to repay the cost of the program, but was in fact $2,450 more than the cost of the program, and thus Plaintiffs allege the obligation to pay constituted an unenforceable penalty.

2. <u>Orientation</u>: All drivers were required to attend orientation, for which no compensation was paid. Plaintiffs allege they were entitled to California and federal minimum wage for the roughly 29 hours spent in this orientation.

3. <u>Over-the-road training</u>: Certain drivers were required to participate in over-the-road training, for which they received a flat $50 per day rate for 28 days. Plaintiffs allege this rate failed to meet the California and federal minimum wage.

After nearly three years litigating these claims, the parties agreed to a proposed settlement, [*see* Doc. No. 76-4 at 12-108 (Joint Stipulation of Settlement and Release of Class Action) (the "settlement")], which the Court preliminarily approved on April 23, 2012. [Doc. No. 78.] For settlement purposes,[1] the Court certified the following class divided into subclasses:

Persons who resided in the State of California at the time of their date of hire and who worked as truck drivers for CRST Van Expedited, Inc. between November 5, 2005 and April 23, 2012. These persons are divided into the following subclasses:

**Subclass 1** – Contract Student Drivers [Drivers who attended truck driver training school at CRST's expense] who worked for CRST for more than 8 months, or who have a current balance that CRST contends is still owed for training expenses which is less than $500;

**Subclass 2** – Contract Student Drivers who have a current balance of $500 or more, which CRST contends is still owed for their training expenses, or who are employed by CRST as of the date of Preliminary Approval Date, but have not completed the 8 months required by their Driver Employment Contacts; and

**Subclass 3** – Drivers who were not Contract Student Drivers [Drivers who (a) paid for their own truck driver training school, (b) who pre-paid CRST for the cost of truck driver training school, or (c) who already had their Commercial Driver's License when they started work for CRST and did not attend truck driver training school].

As consideration for the release of all claims expressly and derivatively asserted in this action, the settlement provides the class with a total financial benefit in excess of $11,600,000.

---

[1] Having reviewed this class definition again, the Court hereby adopts its prior analysis and finds the requirements of Fed. R. Civ. P. 23 met for final settlement approval. [*See* Doc. No. 78.]

1    This includes a non-reversionary $2,625,000 cash payout and over $9,000,00 in outstanding debt
2    under the Driver Employment Contracts that CRST agrees to relieve.  In addition to the financial
3    benefits of the settlement, CRST has agreed to significant changes to its policies and training
4    program that will benefit its employees going forward, including a full disclosure form provided to
5    employees prior to enrollment in the training program, temporary employee status for drivers
6    when tested by the Department of Motor Vehicles, payment for drivers during orientation going
7    forward, payment by a split mile basis rather than $50 per day for over-the-road training going
8    forward, and a $250 bonus going forward for all drivers who remain employed eight months after
9    completion of the training program.  [*See* Doc. No. 88-5.]

10   **DISCUSSION**

11   **I.      Final Approval of the Settlement**

12          Voluntary conciliation and settlement are the preferred means of dispute resolution in
13   complex class action litigation.  *Officers for Justice v. Civil Service Com'n of City and County of*
14   *San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982).  And though, "[u]nlike the settlement of most
15   private civil actions, class actions may be settled only with the approval of the district court," "the
16   court's intrusion upon what is otherwise a private consensual agreement negotiated between the
17   parties to a lawsuit must be limited." *Id.* at 623, 625; *see also* Fed. R. Civ. P. 23(e).  Courts are not
18   "to reach any ultimate conclusions on the contested issues of fact and law which underlie the
19   merits of the dispute," nor is "[t]he proposed settlement [] to be judged against a hypothetical or
20   speculative measure of what might have been achieved by the negotiators." *Id.*  Rather, "a district
21   court's only role in reviewing the substance of [a] settlement is to ensure that it is 'fair, adequate,
22   and free of collusion.'" *Lane v. Facebook*, __F.3d__, 2012 WL 4125857, at *3 (9th Cir. Sept. 20,
23   2012) (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)).

24          In making this appraisal, courts have "broad discretion" to consider a range of factors such
25   as "the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further
26   litigation; the risk of maintaining class action status throughout the trial; the amount offered in
27   settlement; the extent of discovery completed and the stage of the proceedings; the experience and
28   views of counsel; the presence of a governmental participant; and the reaction of the class

- 3 -

1   members to the proposed settlement." *Id.* (citing *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370,

2   1375 (9th Cir.1993)). "The relative importance to be attached to any factor will depend upon and

3   be dictated by the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts

4   and circumstances presented by each individual case." *Officers for Justice*, 688 F.2d at 625.

5          Here, the Court finds the proposed settlement fair, adequate, and free of collusion. As

6   discussed more fully below, the settlement is the product of arms-length negotiations by

7   experienced counsel before a respected mediator, reached after and in light of years of litigation

8   and ample discovery into the asserted claims, and provides the class with both a substantial cash

9   recovery as well as significant debt relief, which together amount to over $11,600,000 in

10  ascertainable financial value. Moreover, the reaction of the class has been overwhelmingly

11  positive and the lone objection is without merit.[2]

12         **A.    Strengths and Risks of the Case and Value of the Settlement**

13         This case was initiated in November 2009, has progressed through several amended

14  pleadings which revised and expanded claims, and Plaintiffs maintain they have developed a

15  strong case. [Doc. No. 88-1.] Defendant disagrees and, should the case not settle, has committed

16  to vigorously contesting the asserted claims. [Doc. No. 92.] But both parties acknowledge the

17  significant risks and costs presented by further litigation and thus avoided by this reasonable

18  compromise. Settlement was reached at the class certification stage with much of the case still to

19  be litigated and thus prevents the likely expense, complexity, and duration of, *inter alia*, full

20  discovery, summary judgment, expert reports, trial, and subsequent appeals. Numerous significant

21  issues remain in dispute, including, *e.g.*, whether California or federal minimum wage laws apply,

22  whether the claims are amenable to class wide proof, whether common issue predominate, and the

23  measure and extent of damages. Not only expensive, going forward despite the many complex

24  issues still in dispute risks further exposure and uncertainty for Defendant as well as impairment or

25  delay of relief to the class.

26         Against these considerations, the parties have agreed to a settlement with a total financial

27

28         [2]     The lone objection to the settlement, that of James Cole, was found meritless and
    denied as detailed in a prior order of the Court. [Doc. No. 98.]

1  value of over $11,600,000, which results in individual payouts to claimants in subclasses 1 and 2

2  equating to over 180% and 140% of estimated damages, respectively. [*See* Doc. No. 88-5 at 4-5.]

3  And subclass 2 receives a payout of over 35% of estimated damages as well as total subclass relief

4  of over $9,000,000 in debt, which equates to at least another $500 in value to each member of

5  subclass 2. This is an extremely favorable result given the considerable challenges the class faces

6  should litigation continue. Moreover, the settlement avoids the risks of extreme results on either

7  end, *i.e.*, complete or no recovery. Thus, it is plainly reasonable for the parties at this stage to find

8  that the actual recovery realized and risks avoided here outweigh the opportunity to pursue

9  potentially more favorable results through full adjudication. These factors support approval. *See*

10  *Officers for Justice*, 688 F.2d at 625 (settlement is necessarily "an amalgam of delicate balancing,

11  gross approximations and rough justice."); *Facebook*, __F.3d__, 2012 WL 4125857, at *3 ("the

12  question whether a settlement is fundamentally fair . . . is different from the question whether the

13  settlement is perfect in the estimation of the reviewing court.").

14      **B.    Endorsement of Experienced Counsel**

15      Class counsel attest to decades of experience litigating class actions, including similar

16  labor and overtime litigation as well as a range of other complex matters. [*See* Doc. No. 81-1

17  (Declaration of A. Mark Pope); Doc. No. 81-5 (Declaration of Douglas J. Campion).] Given their

18  extensive experience and understanding of the strengths and weaknesses of cases such as this,

19  class counsel's endorsement weighs in favor of final approval. *See Singer v. Beckon Dickinson*

20  *and Co.*, 2010 WL 2196104, at *6 (S.D. Cal. June 1, 2010).

21      **C.    Reaction of the Class**

22      The reaction of the class has been almost entirely positive. Of the over 7,000 class

23  members noticed, 3,069 have submitted claims and only ten have opted out. [*See* Doc. No. 88-7,

24  Ex. F (list of individuals who have opted-out).] Only a single class member objected, which

25  objection the Court overruled as meritless. [*See* Doc. No. 98.] The small percentage of opt-outs

26  and objectors strongly supports the fairness of the settlement. *Cf. McPhail v. First Command*

27  *Financial Planning, Inc.*, 2009 WL 938841, at *3 (S.D. Cal. March 30, 2009) ("If only a small

28  number of objections are received, that fact can be viewed as indicative of the adequacy of the

1    settlement.") (internal citations omitted).

2         **D.    No Suggestion Of Collusion**

3         No aspect of the settlement suggests collusion. Rather it was reached after conference
4    before the Honorable William J. McCurine and three full days of mediation before the Honorable
5    Leo S. Papas (Ret.), [*see* Doc. 88-5 (Declaration of A. Mark Pope)], and neither the requested
6    attorneys' fees nor the requested incentive awards appear unreasonable, [*see infra*]. Nor has even
7    the lone objector suggested collusion. Much to the contrary, the circumstances and extent of the
8    parties' negotiations suggest fundamental fairness and thus weigh in favor of approval.

9         In light of the foregoing reasons, the Court finds the settlement fair, adequate, and free of
10   collusion, and thus **GRANTS** final approval of the settlement.

11   **II.    Attorneys' Fees**

12        This action asserts California claims premised on diversity jurisdiction, and thus the Court
13   applies California law to determine both the right to and method for calculating fees. *See*
14   *Mangold*, 67 F.3d at 1478. Under California law, the primary method for determining the amount
15   of reasonable attorneys' fees is the lodestar method, which multiplies the number of hours
16   reasonably expended by a reasonable hourly rate with the court increasing or decreasing that
17   amount by applying a positive or negative multiplier based on, among other factors, the quality of
18   representation, the novelty and complexity of the issues, the results obtained, and the contingent
19   risk presented. *In re Consumer Privacy Cases*, 175 Cal.App.4th 545, 556–57 (2009). But in cases
20   such as this, where the class benefit can be monetized with a reasonable degree of certainty, a
21   percentage of the benefit approach may be used. *Id.* at 557–58 (citing *Lealao v. Beneficial*
22   *California, Inc.*, 82 Cal.App.4th 19, 26–27 (2000)).

23        Under the percentage method, California has recognized that most fee awards based on
24   either a lodestar or percentage calculation are 33 percent and has endorsed the federal benchmark
25   of 25 percent. *In re Consumer Privacy Cases*, 175 Cal.App.4th at 556 n. 13. As to the settlement
26   fund amount: ". . . The total fund could be used to measure whether the portion allocated to the
27   class and to attorney fees is reasonable." *Id.* at 553–54 (citing Manual for Complex Litigation (4th
28   ed. 2008) § 21.71, p. 525). Always, "[t]he ultimate goal is to award a reasonable fee." *See*

1    *Hartless v. Clorox*, 273 F.R.D. 630, 645 (S.D. Cal. 2011).

2       Here, the settlement confers a total financial benefit to the class in excess of $11,600,000,
3 including both a non-reversionary cash payment of $2,625,000 and over $9,000,000 in
4 reimbursement/debt relief for those class member that CRST claims owed payment pursuant to
5 Driver Employment Contracts (*i.e.*, for not working a full 8 months after truck driver training
6 school). Additionally, the settlement confers non-financial benefits, including CRST's agreement
7 to contact credit reporting agencies to remove record of debt relieved by the settlement, and
8 substantial changes to CRST's training program that will benefit drivers going forward.

9       In light of the results achieved, the requested fees appear reasonable. The settlement
10 provides for, and class counsel here seeks, an award of $875,000 in fees which constitutes 33 1/3
11 % of the cash payment but only 7.5 % of the total $11,650,000 financial value of the settlement.
12 These percentages compare favorably with both California (33%) and federal (25%) benchmarks.
13 The requested fee compares well with a lodestar cross-check as well. Applying class counsel's
14 hourly rates ranging from $150 to $450, which fall within if not below typical rates for attorneys
15 of comparable experience, the total lodestar totals $586,916.50. [*See, e.g.*, Doc. No. 81-3 at 78
16 (summary class counsel hourly rates and hours expended).] An approximately 1.5 lodestar
17 multiplier results in the $875,000 requested fee. This appears reasonable given the risks borne by
18 counsel proceeding on contingency, the duration and complexity of the case, as well as the
19 substantial benefit realized for the class. *See Singer*, 2010 WL 2196104, at *8 (awarding 33 1/3%
20 in wage and hour class action); *Ingalls v. Hallmark Mktg. Corp.*, 08cv4342 (C.D. Cal. Oct. 16,
21 2009) (awarding 33.33% fee on a $5.6 million wage and hour class action); *Birch v. Office Depot,
22 Inc.*, Case No. 06cv1690 (S.D. Cal. Sept. 28, 2007) (awarding a 40% fee on a $16 million wage
23 and hour class action); *Rippee v. Boston Mkt. Corp.*, Case No. 05cv1359 (S.D. Cal. Oct. 10, 2006)
24 (awarding a 40% fee on a $3.75 million wage and hour class action).

25       So, too, the requested costs appear reasonable. The settlement provides for not more than
26 $35,000 in attorney costs as well as reasonable costs for notice and claims administration. Class
27 counsel seek $29,160.32 in attorney costs and $86,500 in claims administration costs. [*See* Doc.
28 No. 88.] These amounts are within that contemplated by the settlement, have been endorsed by

1   experienced counsel and claims administration consultants involved in this case, and are thus

2   presumed reasonable. [*See id.*] Further, nothing suggests the contrary. *See In re Media Vision*

3   *Tech. Sec. Litig.*, 913 F. Supp. 1362, 1366 (N.D. Cal. 1996) (costs and expenses incurred by

4   experience counsel in creating or preserving a common fund presumed reasonable); *see also In re*

5   *Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1177-78 (S.D. Cal. 2007) (finding such costs

6   and expenses "necessary" to class action litigation).

7         Thus, the Court hereby **GRANTS** Plaintiffs' requested fees and costs.

8   **III.**     **Incentive Payments to Class Representatives**

9         Each of the three Class Representatives seeks an incentive payment of $15,000 for their

10  service in prosecuting this action on behalf of the class. [*See* Doc. No. 88-1 at 20.] "The criteria

11  courts may consider in determining whether to make an incentive award include: 1) the risk to the

12  class representative in commencing suit, both financial and otherwise; 2) the notoriety and

13  personal difficulties encountered by the class representative; 3) the amount of time and effort spent

14  by the class representative; 4) the duration of the litigation and; 5) the personal benefit (or lack

15  thereof) enjoyed by the class representative as a result of the litigation." *Van Vranken v. Atlantic*

16  *Richfield Co.*, 901 F.Supp. 294, 299 (N.D. Cal.1995) (citations omitted).

17        Here, all of these factors weigh in favor of the awards sought. This employment class

18  action risked and continues to risk the Class Representatives' reputations and future employability

19  in the field.  It also exposed them to the possibility of joint and several liability for counterclaims.

20  *See Martin v. AmeriPride Services, Inc.*, 2011 WL 2313604 (S.D. Cal. 2011) (acknowledging

21  professional and legal risks posed to employees participating as class representatives in

22  employment class actions).  Further, each representative was active in assisting class counsel in a

23  wide variety of respects from initiating the case, participating in conferences among opposing

24  counsel, as well as investigators and other retained consultants, providing factual background and

25  support, analyzing employment and training manuals, pay stubs, CRST document productions, and

26  the contracts in dispute, and communicating with class counsel regularly in regard to the claims,

27  defenses, and legal strategy in the case.  Casas and Newmann attended the settlement conference

28  before Judge McCurine and the first mediation session before Judge Papas.  Smith was unable to

1   attend in person because of health issues, but made himself available for consultation by telephone

2   as needed. [*See* Doc. Nos. 88-2, 88-3, 88-4 (Declarations of Smith, Casas, and Newmann,

3   respectively).]   This record of active involvement despite the risks posed supports approval of

4   incentive awards. *Van Vranken*, 901 F.Supp. at 300.

5          Moreover, the amount of the incentive payments requested, $15,000, is well within the

6   range awarded in similar cases. *See Singer*, 2010 WL 2196104, at *9 ($25,000 incentive award);

7   *Martin*, 2011 WL 2313604 ($18,500 incentive award); *Brotherton v. Cleveland*, 141 F.Supp.2d

8   907, 913–14 (S.D. Ohio 2001) ($50,000 incentive award); *Van Vranken*, 901 F.Supp. at 300

9   ($50,000 incentive award).

10          Thus, the Court hereby **GRANTS** the requested class representative incentive awards.

11                                    **CONCLUSION**

12          For the foregoing reasons, the Court hereby:

13   •       **GRANTS** final settlement approval;

14   •       **GRANTS** Plaintiffs' requests for class representative incentive awards;

15   •       **GRANTS** Plaintiffs' motion for attorneys' fees and costs.

16   **IT IS SO ORDERED.**

17   **DATED:**      January 14, 2013

18                                    **IRMA E. GONZALEZ**
                                      **United States District Judge**

19

20

21

22

23

24

25

26

27

28

10cv1116